**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>RAPHAEL WILLIAMS,<br><br>*Defendant*. | Crim. No. 17-341<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This matter comes before the Court by way of Defendant Raphael Williams' motion to modify his sentence and for immediate compassionate release. D.E. 22, 23. The Government filed opposition. D.E. 25  Williams then filed a supplemental letter brief,  D.E. 26, and Williams' significant other also submitted a letter on his behalf, D.E. 27.   The Court reviewed the parties' submissions[1] and considered the motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b).  Defendant seeks immediate release due to the ongoing COVID-19 pandemic.  For the following reasons, Defendant's motion is denied.

---

[1] Defendant's brief in support of his motion is referred to as "Br." (D.E. 23); the Government's opposition brief is referred to as "Opp." (D.E. 25); and Defendant's supplemental letter brief (D.E. 26) is referred to as "Supp."

## I.     BACKGROUND

### A.  Underlying Criminal Proceeding

On August 25, 2017, Williams was indicted for possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 1922(g)(1).  The Government and Williams then entered into a written plea agreement, in which Williams agreed to plead guilty and stipulated to certain facts.  D.E. 13.  Williams pled guilty on May 16, 2018.  D.E. 11.

Williams was thereafter sentenced on September 19, 2018.  D.E. 17.  He faced a maximum sentence of 10 years pursuant to the statute under which he was charged.  Williams faced a United States Sentencing Guidelines' range of 57-71 months based on a total offense level of 19 and a criminal history category of V.  PSR ¶ 87.  The Court sentenced Williams to 64 months.  D.E. 18.  Williams has an extensive criminal record.  He had 4 juvenile adjudications that were the equivalent of adult felony offenses for firearms, receiving stolen property, narcotics trafficking, and drug distribution.  PSR ¶¶ 28-31.  None of the juvenile adjudications resulted in any criminal history points.  *Id.*  As an adult, he had 6 felony convictions:  two for receiving stolen property, possession of heroin, distribution of heroin, aggravated assault, and possession of a weapon by a convicted felon.  *Id.* ¶¶ 32-38.  The last offense was a federal crime for which he received 39 months' incarceration and 3 years' supervised release.  *Id.* ¶ 38.  In 3 of his adult felony convictions arising from state charges, he violated probation.  *Id.* ¶¶ 33, 34, 36.  While on supervised release in the federal matter, he tested positive for marijuana on 9 occasions and pled guilty to a violation for drug use.  *Id.* ¶ 38.  While on supervised release, he was also ordered to participate in intensive out-patient drug treatment but was discharged for failure to participate as directed.  *Id.*

Williams is currently housed at FCI Allenwood Medium in Pennsylvania.  He is scheduled to be released on October 20, 2022.

**B.  COVID-19 Pandemic**

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html #background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets.  These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.*  Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death).  *Id.*  As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face masks), and maintenance of clean surfaces and devices.  *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases.  *COVID-19*, "Older Adults,"  Centers  for  Disease  Control  and  Prevention  (April  2,  2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.    For example, persons in their sixties and seventies are at a higher risk than people in their fifties.  *Id.* Those 85 or older are at greatest risk.  *Id.*  Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States.  *Id.*  The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic lung diseases (including asthma if it is moderate to severe), dementia or other neurological conditions, heart conditions such as coronary artery disease, weakened immune system from organ transplant,

3

obesity, pregnancy, sickle cell disease, smoking, stroke or cerebrovascular disease, and type 2 diabetes mellitus. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of June 10, 2021, the United States has had 33,224,075 COVID-19 cases, resulting in 595,625 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited June 10, 2021).

**1. Federal Bureau of Prisons**

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a minimum of fourteen days or until cleared by medical staff. Opp. at 4. The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff. *Id.* at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus: group gatherings are limited to permit social

4

distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved. *Id.*

The BOP also has a COVID-19 vaccination plan. *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. Inmates fall into different priority levels for vaccination: Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates). *Id.* As of June 10, 2021, the BOP had administered 190,150 doses of vaccine. *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 10, 2021).

The BOP COVID-19 current statistics are as follows: (1) 89 inmates and 126 staff have confirmed positive tests; (2) 44,992 inmates and 6,850 staff have recovered; and (3) 238 inmates and 4 staff have died. *Id.* FCI Allenwood Medium, where Defendant is housed, currently reports no positive cases as to either inmates or staff. *Id.* In addition, 512 inmates and 50 staff have recovered, and, fortunately, there have not been any deaths.

### C. Williams' Other Relevant Background, Activities, and Conditions

Williams is 36 years old. He indicates that he suffers from asthma and also has difficulty breathing due to a prior gunshot wound. Br. at 1. In his Presentence Report, Williams did not report that he suffered from asthma. PSR ¶ 68. Williams did indicate that he had been shot in

2017, resulting in hospitalization for 4 days, but did not indicate that he suffered any lingering effects. *Id.* ¶¶ 65-66. Williams also reports that during his incarceration, he has completed over 20 programs, received a forklift certification, and has taught other inmates how to create a resume. Supp. at 2.

The Government responds that Williams tested positive for COVID-19 on November 19, 2020 but was asymptomatic. Opp. at 25; Ex. H (Defendant's medical records) at 63, 71. Williams did not have a cough, shortness of breath, fatigue, body aches (with one exception), or loss of taste/smell. *Id.* at 51-63. Williams was frequently monitored after his diagnosis and did not have a fever; instead, he remained clinically stable. *Id.* On November 20, 2020, Defendant reported body aches for which he was prescribed acetaminophen; and later reported headaches 3-4 times a week *Id.* at 1-5. The CDC reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare." *COVID-19*, "Reinfection with COVID-19," Centers for Disease Control and Prevention, (Oct. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

As to Defendant's asthma, the Government indicates that it does not rise to a moderate level. Opp. at 20-21. Instead, the Government posits, Williams' asthma is mild and well-controlled. *Id.* at 22. The Government acknowledges that while incarcerated, Defendant has occasionally complained of shortness of breath due to the gunshot wound and asthma but adds that it has been effectively treated through an albuterol pump and nebulizer treatments. The Government indicates that all of Defendant's Wright Peak Flow tests (which measures how well air moves in and out of the lungs) since October 2018 have been within normal limits. Ex. F (Defendant's medical records) at 1, Ex. G (same) at 11-12, Ex. H (same) at 25. The Government continues that Williams is in BOP's "Medical Level 1," the lowest of the four medical care levels

in BOP's classification system.  Opp. at 19;   Ex E (Defendant's inmate profile).  Medical Level 1 is for inmates who require infrequent medical intervention and are generally healthy.

On November 4, 2020, Williams wrote to the Warden of FCI Allenwood Medium, seeking release for the same reasons he raises now.  Ex. B at 1.  On November 16, 2020, the Warden denied Defendant's request.  Ex. C at 1.

## II.   LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment.  The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

(i) *extraordinary and compelling reasons warrant such a reduction*; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

*and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

7

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).  The parties agree that Defendant has satisfied the statutory exhaustion requirement.  Opp. at 4.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13.  U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The application notes to the section provide 4 circumstances that can be considered extraordinary and compelling:  (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons.  *Id.* cmt. n. 1(A)-(D).

In the application note, the fourth consideration requires a determination by the Director of the BOP.  *Id.* cmt. n. 1(D).  Here, the Government does not contest that the policy statement should also apply when the motion is filed by a defendant, in addition to a motion filed by the BOP Director.  The Court also finds that the policy statement applies here, although this has been a point of contention in similar cases.  *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020).

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).  They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses of Defendant.  *Id.*

8

### III.    ANALYSIS

Turning first to Williams's arguments concerning the pandemic, his asthma (if moderate to severe) potentially increases his risk of suffering an adverse outcome should he contract the virus.  This factor weighs in favor of Defendant's request.

However, the Court finds that Defendant has not met his burden as to extraordinary and compelling circumstance as to his asthma (and the effects of the gunshot wound) for the following reasons.  First, Williams has already contracted COVID-19 (and did not suffer any serious effects), which means his likelihood of reinfection is very small.   Second, FCI Allenwood Medium's current infection numbers are very low, with only one inmate (and no staff) positive.   Third, Williams' asthma is well-controlled, and his Wright Peak Flow tests have all been within normal limits.  Finally, Williams has been receiving consistent medical care and treatment.

Moreover, under Section 3553(a), the Court must consider the need to afford adequate deterrence and the need to protect the public from future offenses by Williams.  The current matter is Williams' *second* federal offense for possessing a firearm after having been convicted of a felony.  In 2012, he was sentenced to 39 months' imprisonment for his first such offense.  PSR ¶ 38.  This sentence did not deter Williams from committing the same offense again.  Besides his extensive and serious juvenile record, Williams has a total of 6 felony convictions (not including the current matter) as an adult.  And he has shown a strong propensity for violating his terms of release, whether it be his conditions of probation, or his conditions of supervised release.  In short, the Court is left with the firm conviction that Williams' past sentences have not adequately deterred him and that he would reoffend if released now.

## IV.     CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion.  An appropriate Order accompanies this Opinion.

Dated:  June 10, 2021

_____
John Michael Vazquez, U.S.D.J.